THOMAS MERVINE *v.* SAMUEL VANLIER et al.

At Sheriff's sale on Execution, *caveat emptor* is the rule.

The Sheriff, at the sale, said he was selling the right and title of the mortgagor, and the crier of the sale advised a friend of his, who asked his advice aside, privately, to have nothing to do with the property ; that whoever bought it would probably buy a law suit. The property, for which the complainant had agreed to pay $2,800, was sold for $1,400. It had been a neighborhood talk that the title of the mortgagor was disputed, and the complainant had himself contributed to becloud the title. There was no allegation in the bill that the title was free from dispute; nor that any better offer had been made for the property. The Court refused to set aside the sale.

The bill, filed March 20th, 1847, states, that on the 29th of Jan. 1842, Thomas Mervine, the complainant, bought of Thomas Welles, one of the defendants, a farm in the township of Deerfield, in the County of Cumberland, for $2800, subject to a mortgage thereon, given by Welles to Daniel Elmer, another of the defendants, dated March 29th, 1841, for $500, with interest.

That Welles gave a deed to the complainant, with full covenants of warranty and seizin ; and that the complainant gave Welles his bond, conditioned for the payment of the said sum of $2800, and a mortgage upon the premises to secure the same ; and also assigned to Welles, as further security, a certain ground rent in Philadelphia, of the yearly value of $570, payable half yearly.

That on the 23d of Dec. 1844, Elmer commenced a foreclosure suit upon his mortgage, against Welles and the complainant. That this complainant put in a demurrer to the bill in that suit, which was overruled ; and afterwards filed such answer in that case as he was advised was material. That after filing the said answer, he, living in Pennsylvania, lost sight of the proceedings in that suit, relying on his counsel to keep him duly informed thereof; and that he knew nothing of the proceedings that occurred at the sale, until a long time after the sale of the mortgaged premises, in the bill after stated.

That in the said foreclosure suit brought by Elmer, a decree

was obtained for the sale of the premises to satisfy the several sums found due to Elmer and to Welles, on their respective mortgages; and a *fi. fa.* was issued to the Sheriff of Cumberland, commanding him to make sale of the premises, and to dispose of the proceeds according to the said decree.

That on the 19th of Dec., 1846, the Sheriff sold the premises. But this complainant avers, that he did not sell the same conformably with the terms of the said decree or of the said execution; but that he sold "the right and title of the said defendants (in that suit) to the premises, if any they have," thereby conveying the idea that it was doubtful if the said Thomas Welles and this complainant had any right or title to the same. And that, at the same time, the person who acted as crier of the said sale informed the bidders "that they had best have nothing to do with the property; that they would buy a heavy law suit if they got it;" by reason of which irregular proceeding on the part of the said Sheriff, and of the representations of the said crier of the said sale, the interests of this complainant were greatly prejudiced; insomuch that persons who came to the sale to bid for the property, and were willing to give a fair price for it, declined bidding, and the same was struck off and sold for the very low sum of $1400, to Samuel Vanlier, the other defendant in this suit.

That there was present at the said sale at least one bidder who was willing to pay for the property, at least $2500, as this complainant has been informed and verily believes; but was deterred from bidding by the unfair mode of proceeding of the Sheriff, and the unfair representations of the crier.

That after the sale, and before this complainant was made aware of the facts aforesaid, the premises were conveyed by the Sheriff to the said Vanlier; and the proceeds have been appropriated, in the first place, to paying off the amount due Elmer on his said mortgage, and the balance thereof, being $656 98, has been paid into Court, subject to its order, where it now is.

The bill prays that the said sale may be vacated; and that Vanlier may be decreed to deliver up to be cancelled the deed received by him from the Sheriff; and that the decree on which the sale was made may be opened, in order that the title of this complainant to the property affected by the said decree may be

definitively settled before a sale of the same, that it may not be sacrificed if the title of this complainant be good; and for such further relief, &c.

Samuel Vanlier put in his several answer. He says he believes $2800 was a very high price for the farm when the complainant bought it, and more than it was worth, though it was then in better order, and worth more than when it was sold by the Sheriff.

He submits that the complainant, being a party to Elmer's foreclosure suit, and having appeared and answered the bill in that suit, is bound by the decree made therein, and was bound to take notice and inform himself of the time and place of sale ; and that he is informed and believes, and therefore charges that the complainant in this suit was, in fact, informed of the time and place of the sale, and might have attended if he had thought fit to do so.

He says it is not true, to his knowledge, information or belief, that the Sheriff sold " the right and title of the said defendants (in that suit) if any they have ;" nor is it true, to his knowledge, information or belief, that the crier of the said sale informed bidders that " they had best have nothing to do with the property, that they would buy a heavy law suit if they got it," or any words to that effect. On the contrary, at the commencement of the sale, the Sheriff caused the conditions of sale by him signed to be publicly made known ; which conditions were for the sale of land the property of Thomas Welles and Thomas Mervine, taken in execution at the suit of Daniel Elmer, complainant ; and the metes and bounds of the farm are therein fully set forth ; and the property was sold agreeably to said conditions, and a number of bids were made by different persons, until, after it had been cried for half an hour or more, this defendant being the highest bidder, at $1400, the same was publicly struck off to him ; and, at the request of the Sheriff, he signed the conditions of sale.

That, according to the conditions of sale, the deed was to be delivered and the purchase money paid on the 26th of Dec., the month in which the sale took place, on which day he paid the purchase money, and the Sheriff delivered to him a deed for the

property; and this defendant, shortly after, took possession of the farm, by renting it to Samuel Rickman, who now holds it as his tenant.

He says he has been put to considerable expense, trouble and inconvenience in obtaining the money to pay for said farm, and in attending to the same since, and in making arrangements and repairs as the owner thereof.

That he does not know what any person present at the sale was willing to give for the property. That he has no information that any one made known his willingness to give more than he, this defendant, bid. That he is informed, and believes it to be true, that some persons were unwilling to bid for the property in consequence of the repeated declarations of the complainant in this case that Thomas Welles never had title to it, and in consequence of the well known character of the complainant for litigation. That he is informed that the answer of the complainant in this case to the bill of the said Daniel Elmer in his said foreclosure suit sets forth that Welles had not a good title to the said farm; and is also informed, that the complainant in this case recently instituted proceedings in some court in Philadelphia, against Welles, to obtain redress from him for an alleged failure in the title, or for fraud in the sale of the said farm by Welles to him.

That the complainant repeatedly declared that he did not intend to pay the Elmer mortgage, but would let Elmer sell the property.

He, therefore, submits that, though it is probably true that the said farm would have sold for something more than he gave for it if sold on a credit, and if not subject to doubts and difficulties, as it was, in regard to the title, under the circumstances he gave a full price; and that, at all events, the complainant, who has himself done so much to question the title of the property and reduce the price of it, has no just cause to complain of a result produced by his own acts.

That he is informed and believes, that Thomas Welles resides out of this State; and that Daniel Elmer is too unwell to answer the bill, and is not likely to be well enough to do so at any time hereafter.

Testimony was taken on both sides.

It was admitted by the counsel of the respective parties, that since the sale of the mortgaged premises to Vanlier, and the payment into Court of the surplus, Welles has been paid the money due to him, and has now no interest in the matter.

*W. L. Dayton* for the complainant.

*L. Q. C. Elmer* contra.

THE CHANCELLOR. At Sheriff's sale on execution, *caveat emptor* is the rule. A mortgage and decree upon it to do not establish that the mortgagor had title when he made the mortgage.

The ground for the relief sought in this case is, that the Sheriff, at the sale, said he was selling the right and title of the mortgagor; and that the crier of the sale advised a friend of his, who asked his advice aside, privately, to have nothing to do with the property; that whoever bought it would probably buy a law suit; and that the property, for which the complainant had agreed to pay $2800, was sold for $1400. This is the case made by the proofs.

The bill states that the crier informed the bidders "that they had best have nothing to do with the property; that they would would buy a heavy law suit if they got it." If the crier, who, it seems, was clerk of the county, had undertaken to volunteer his opinion publicly to the bidders, that they had best not, &c., (as above,) and to use the influence of his judgment publicly to deter bidding, the case would have been presented in a stronger light than that in which it now appears. But, being applied to privately by a friend, and having heard what Mervine had said to him about the title, what was he to say? Could he advise his friend that the title was good? Persons who think of bidding at such a sale must make their own inquiries, and satisfy themselves as to the title. They must not depend on inquiring of the Sheriff, at the sale, as to the title. He is not supposed to know any thing more about it than they do. And if he is inquired of, all he can say is, that he is about to sell the right and title of the mortgagor.

One part of the prayer of the bill is, that Mervine's title may be definitively settled before the property be sold. This could not be done, if the sale should be set aside. In a bill by a mortgagee against a mortgagor, to foreclose the mortgage, the title of the mortgagor as against a third person cannot be established. And if, at the time of the sale under the decree in such suit, a cloud rests on the title of the mortgagor, it is his misfortune; and he cannot expect that the property will bring its full value. It seems that one of the persons who attended the sale with a view of bidding had an idea that a Sheriff, on a sale made by him, gave a warrantee deed; and when he found this was not the case he declined bidding. It had been a neighborhood talk that the title of the mortgagor was disputed; and Mervine, the complainant in this case, had himself contributed to becloud the title.

Again, the complainant was apprized that the property was advertised for sale, and chose not to attend the sale. If he desired or thought he should be able to satisfy bidders that the title was good, he should have attended the sale.

There is no allegation in the bill that the title is now free from dispute; nor does it show that any better offer has been made for the property, under the circumstances under which it was sold. Nor is there any such ground of assurance that the property would bring more at another sale, under the same circumstances as to the title, as to justify the Court in setting aside the sale that has been made.

Applications to open the biddings, before the deed has been delivered, a larger bid having been offered, have been often successful. But after the deed has been delivered, and the purchaser has gone into possession, a strong case should be required to set aside the deed. It appears to me that it would be a dangerous precedent for the Court to interfere in a case like this.

The bill will be dismissed, with costs.

Decree accordingly.